E-FILED
Friday, 14 October, 2005   12:03:01 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RIVERSTONE GROUP, INC., an Illinois corporation, Plaintiff, v. BIG ISLAND RIVER CONSERVANCY DISTRICT, an Illinois River Conservancy District; THE VILLAGE OF MILAN, ILLINOIS, an Illinois municipal corporation; and THE UNITED STATES OF AMERICA, through the United States Army Corps of Engineers, Defendants. | Civil Action No. 05-4020 |

# O R D E R

This matter is now before the Court on Motions to Dismiss by Defendants Village of Milan, Illinois, the Big Island River Conservancy District, and the United States. For the reasons set forth below, the Village of Milan's Motion to Dismiss [#13] is GRANTED. The Big Island River Conservancy District's Motion to Dismiss [#15] is GRANTED, and the United States' Motion to Dismiss [#27] is GRANTED.

## BACKGROUND

In 1978, the Army Corps of Engineers ("Corps") contracted with the Village of Milan, Illinois ("Milan") and the Big Island River Conservancy District ("Big Island") for the construction, operation, and maintenance of a flood control project in Milan, Illinois. This project had been authorized by Congress in the Flood Control Act of 1968. The Corps was primarily responsible for building the flood control project, and Milan and Big Island

(collectively referred to hereafter as "Local Sponsors") agreed to obtain easements for the land. The Local Sponsors further agreed to maintain and operate the works after completion in accordance with the regulations prescribed by the Secretary of the Army.

In obtaining the rights of way necessary for the Corps to build a levee, the Local Sponsors obtained an easement that has now become the heart of this dispute. On November 21, 1985, Plaintiff, Riverstone Group, Inc. ("Riverstone"), conveyed easement rights in four parcels of real property (known as parcels A, B, C, and D) to Big Island for the limited purposes of constructing, maintaining, operating, patrolling, and replacing the flood control levee. When the Corps finished building the flood control project, the levee was turned over to the Local Sponsors to operate and maintain.

Riverstone, the fee simple owner of this real property, intends to construct a subsurface dredge pipe beneath the existing flood control levee. Riverstone reserved the right to construct this dredge pipe in the express terms of the easement, which indicated that Riverstone reserved the right in parcel D to:

> [P]lace a permanent dredge pipe across, under or through the levee... provided plans for such work are submitted to and receive the prior approval of the U.S. Army Corps of Engineers and provided that a copy of such application to the U.S. Army Corps of Engineers is concurrently delivered to The Big Island River Conservancy District.

Riverstone also reserved the right to excavate and dredge sand and gravel from parcel A and retained all of the remaining rights and privileges associated with the four parcels as may be used by Riverstone without interfering with or abridging the easement.

On October 7, 1991, Riverstone announced its plans to install and operate the proposed dredge pipe on parcel D. Riverstone delivered formal plans to the Corps, which

described both the placement of a permanent subsurface dredge pipe under the levee and the installation of a berm at the dredge pipe crossing. Riverstone also delivered copies of these plans to Big Island, as required by the terms of the easement.

On November 19, 1991, the Corps responded that it would give approval subject to the following conditions:

> a. The proposed new levee has a 30-foot wide crown in lieu of the proposed 10-foot crown.
>
> b. The new levee is constructed of impervious material with not less than 50 percent passing the No. 200 sieve. The material must be placed in eight-inch lifts and compacted to a minimum of 95 percent standard proctor density within two percent of optimum water content.
>
> c. No borrow activity is within 100 feet of the landside toe of either the new proposed levee or the existing Federal levee.
>
> d. The levee is riprapped to prevent any erosion which can occur from leakage from the dredge pipe.
>
> e. *Letters of concurrence from the local sponsors, the Big Island River Conservancy District and the Village of Milan, are provided to this office before work commences.*

(Emphasis added). Riverstone submitted new plans that incorporated the requirements identified in a through e. On February 13, 2004, the Corps wrote that "[i]t appears the proposed levee alignment, overall dimensions and slope, along with the casing pipe requirements, conform to the requirements we have previously provided to you." In this letter, the Corps identified additional conditions for the proposed mining operations adjacent to the levee:

> a. A 200 foot minimum width of natural ground shall be maintained between the Project levee toe and any

>    mining operation, with the slope from this point descending into the mining location at a rate no steeper than 1 vertical to 5 horizontal, and
>
>    b.   A thorough seepage analysis, taking into account existing geological conditions, maximum river elevation, anticipated extent of quarrying through the life of the project, and all other pertinent factors, shall be completed by a registered engineer to verify that these specified limits on quarrying operations are adequate to maintain levee integrity, or used to delineate more conservative limits as necessary, and
>
>    c.   The seepage requirements shall indicate what changes will occur to infiltration into the Project area as a result of the mining operations. If these changes will increase drainage and pumping requirements presently incurred by the [Local] Sponsor you must indicate what your participation will be concerning the water conveyance and pumping measures that must be undertaken to mitigate those increases, and
>
>    d.   A Clean Water Act permit determination will be made once a complete application for the entire proposed operation is submitted to our [the Corp's] Regulatory Branch, and
>
>    e.   *Final approval of project modifications remains with the Local Sponsors.*

(Emphasis added).

On April 9, 2004, the Corps sent the Local Sponsors a letter which indicated that it provided their "final technical comments" regarding Riverstone's proposed modifications. In a letter dated January 19, 2005, the Local Sponsors denied Riverstone's proposed modification of the flood control project.

Riverstone then filed this action asking the Court declare that only the Corps had the authority to issue final approval for modification of the flood control project, that the Corps had issued its final approval of the flood control project, and that the Local Sponsors have

-4-

no authority to withhold approval of the modifications. In the alternative, Plaintiff contends that the Corps unlawfully delegated its authority to issue final approval for modification of the flood control project. Plaintiff asks the Court to order the Corps to withdraw its unlawful delegation and issue final approval for modification of the flood control project. The Defendants have now filed Motions to Dismiss. The Motions are fully briefed, and this Order follows.

## LEGAL STANDARD

A complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief. *See* Conley v. Gibson, 355 U.S. 41 (1957); Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *See* Albright v. Oliver, 510 U.S. 266, 268 (1994); Hishon v. King & Spalding, 467 U.S. 69 (1984); Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997); M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 969 (7th Cir. 1995); Early v. Bankers Life & Cas. Co., 959 F.2d 75 (7th Cir. 1992).

# DISCUSSION

I.  Subject Matter Jurisdiction

Defendants first argue that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1331 because Riverstone has failed to cite any specific section of those statutes that has allegedly been violated by any Defendant. Riverstone has asserted jurisdiction under the Flood Control Act, 33 U.S.C. § 701, and the Mississippi Flood Control Act of 1928, 33 U.S.C. § 702a, as well as the Administrative Procedure Act, 5 U.S.C. § 701. Specifically, Riverstone argues that the overarching issue of this case is the rights and obligations of the parties under the Flood Control Act and that the Corps impermissibly delegated its approval authority to the Local Sponsors.

With all due respect, Defendants seek to hold Riverstone to a standard of pleading that is not required by the Federal Rules. Federal Rule of Civil Procedure 8(a) does not require a claimant to set forth a detailed statement of the claim, but rather only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 103 (1957). A complaint need not plead legal theory, nor need it match facts to every element of a legal theory. Bennett v. Schmidt, 153 F.3d 516 (7th Cir. 1998); Kyle v. Morton High School, 144 F.3d 448, 455 (7th Cir. 1988). While Riverstone's Complaint cannot be fairly described as a model of clarity, it contains a jurisdictional statement identifying the Flood Control Act, the Mississippi Flood Control Act, and regulations promulgated thereunder.

Moreover, even assuming that Plaintiff has no direct claim under either of these statutes, it may still present a federal question for a claim that a federal agency exceeded its statutory authority under the APA. In Champion International Corp. v. United States

Environmental Protection Agency, 850 F.2d 182, 185-86 (4th Cir. 1988), the Fourth Circuit found that a district court had jurisdiction to consider a claim that a federal agency had exceeded its delegated powers. Where such a claim is alleged, the district court has jurisdiction to at least determine whether the agency acted within its statutory authority. Id. If the court determines that the agency acted within its statutory authority, then the court should dismiss the case for lack of subject matter jurisdiction "when the subject matter is one entrusted to the agency." Id. Defendants have introduced no contrary authority or otherwise supported their bald contention that this case involves only interpretations of state law. Accordingly, Defendants have not demonstrated that dismissal on this basis would be appropriate.

II.   Standing

In every federal case, the party bringing suit must establish standing to bring the action. Elk Grove Unified School Dist. v. Newdow, 124 S. Ct. 2301, 2308 (2004). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Id., quoting Warth v. Seldin, 422 U.S. 490, 498 (1975). Questions of standing involve both constitutional limitations on federal court jurisdiction, as well as prudential limitations on its exercise. Kowalski v. Tesmer, 125 S. Ct. 564, 567 (2004).

The constitutional limitations on standing eliminate cases where the plaintiff is unable to show a case or controversy between himself and the defendant. Family & Children's Center, Inc. v. School City of Mishawaka, 13 F.3d 1052, 1058 (7th Cir. 1994). To satisfy Article III, a plaintiff must: (1) have suffered an injury in fact; (2) that is traceable

to the defendant's conduct; and (3) that a favorable decision by the court will likely redress or remedy the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The Local Sponsors maintain that Riverstone lacks standing because it has failed to allege any facts indicating that it has suffered injury in fact arising from an invasion of a judicially cognizable interest by them. Specifically, the Local Sponsors argue that Riverstone's assertion in its Complaint that it has been granted final approval by the Corps eliminates any injury in fact because, under Riverstone's theory, any actions by the Local Sponsors are unnecessary, and all it needs to proceed is a permit by the Corps. As a result, the Local Sponsors argue that Riverstone has suffered no injury in fact and is effectively seeking an advisory opinion to the effect that its interpretation of the law is correct.

Riverstone responds that it has suffered an injury in fact, as the Corps' approval was conditioned on the approval of the Local Sponsors, and under the Flood Control Act, only the Corps can approve or disapprove a modification of the levee. As the Local Sponsors have denied their approval, and the Corps' approval was conditioned on obtaining approval from the Local Sponsors, Riverstone maintains that its reserved right to construct the underground dredge pipe has effectively been denied.

An injury in fact requires that a plaintiff suffer an invasion of a legally protected interest which is concrete, particularized and actual or imminent. Southworth v. Bd. of Regents of Univ. of Wisconsin Sys., 307 F.3d 566, 573 (7th Cir. 2002), citing Lujan, 504 U.S. at 560. Here, Riverstone's allegations, when construed in the light most favorable to them, promote the reasonable inference that its expressly reserved right to construct the underground dredge pipe has been frustrated or denied by the actions of the Corps in

conditioning its approval on the approval of the Local Sponsors. This is sufficient to establish an injury in fact with respect to Riverstone's claims against the Corps. However, where its claim is based on an improper delegation of authority by the Corps based on its obligations under the Flood Control Act and an alleged absence of any approval authority by the Local Sponsors, Riverstone has failed to demonstrate any injury in fact that is fairly traceable to the Local Sponsors. The Motions to Dismiss by the Local Sponsors will therefore be granted, and Milan and Big Island are dismissed without prejudice for lack of standing.

III.   Case or Controversy

Defendants next argue that there is no case or controversy because the matter is not ripe for decision. Defendants argue that the Corps directed Riverstone to take certain actions that have not yet been fulfilled. Until Riverstone complies with the prerequisites specified by the Corps, there can be no final decision or consideration on the merits.

It is well-settled that the existence of a case or controversy is a prerequisite for the exercise of federal jurisdiction. Sprint Spectrum v. City of Carmel, Indiana, 361 F.3d 998, 1002 (7th Cir. 2004). Ripeness is one element of the case or controversy analysis that is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." National Park Hospitality Association v. Department of the Interior, 538 U.S. 803, 808, 123 S.Ct. 2026 (2003); Abbott Laboratories v. Gardner, 387 U.S. 136, 148-48, 87 S.Ct. 1507 (1967). In determining whether an administrative action is ripe for review, courts must consider both

the fitness of the issues for judicial decision and the hardship to the parties if consideration is withheld.  National Park Hospitality Association, 583 U.S. at 808.

Riverstone responds that this case is not about whether the Corps made a final decision, but rather whether the Corps improperly delegated its statutory approval authority to the Local Sponsors in violation of the Flood Control Act.   As this case revolves around "pure legal issues" involving the interpretation of the Flood Control Act and regulations, Riverstone contends that the issues are fit for judicial decision.  Furthermore, Riverstone argues that its challenge to the improper transfer of approval authority by the Corps satisfies the hardship requirement.

Riverstone bases its argument on the theory that the Corps issued a final approval of its project, yet the plain language of the Corps' communications indicate that this is not the case.  The Corps' February 13, 2004, letter specifically states:

> With this cooperation agreement the sponsors are responsible for the condition of the Project as well as the operation and maintenance of the Project.  To that end, final approval of project modifications remains with the Village of Milan, IL and the Big Island River Conservancy District.  The Corps of Engineers will continue to provide technical evaluations for proposed Project modifications.

On April 9, 2004, the Corps submitted its final technical comments to the Local Sponsors.  These comments included the following observation:

> We have determined the performance of the flood control project will not be adversely impacted if the design, construction, and maintenance of the proposed actions are done in accordance with the guidance provided in this letter.  Prior to construction of the original project, a cooperation agreement was entered into between the United States of America, the Village of Milan, IL and Big Island River Conservancy District.  Under this cooperation agreement, which only governs the relationship between the sponsor and

> the United States, final approval of project modifications determined by the United States not to adversely impact the project, is the responsibility of the Village of Milan and the Big Island River Conservancy District. The sponsors are responsible for the condition of the project as well as the operation and maintenance of the project. The Corps of Engineers will continue to provide technical evaluations for proposed Project modifications.

Thus, while the Corps indicated its conclusion that the proposed modifications would not adversely impact the existing project if done in accordance with its technical specifications, the Corps clearly was not providing final approval for Riverstone to begin the modifications.

Defendants correctly note that even assuming that the Local Sponsors did not have any authority to prohibit the proposed modification, Riverstone did not have final approval to begin construction of the dredge pipe because the Corps' decision did not constitute final approval. However, this misses the point of Riverstone's argument. The Corps' final technical comments were contingent upon receiving approval from the Local Sponsors, and but for the Corps' allegedly improper delegation of final approval authority to the Local Sponsors, the Corps' determination that the proposed modifications would not adversely impact the performance of the flood control project may have been sufficient approval for Riverstone to proceed. Accordingly, the Court finds that this litigation presents a case or controversy against the Corps to the extent that Riverstone seeks a declaratory judgment as to whether the Corps' condition requiring approval from the Local Sponsors constituted an improper delegation of the Corps' approval authority under the Flood Control Act and regulations.

That being said, this litigation, as framed by Riverstone to focus on the purportedly improper delegation by the Corps, does not demonstrate any present case or controversy

-11-

against the Local Sponsors. The sole question that is ripe for litigation at this point is whether or not there was any such improper delegation of the Corps' duties under the Flood Control Act. As this question does not directly implicate any legal issue that is ripe for adjudication with respect to the Local Sponsors, the Court finds that Milan and Big Island should be dismissed without prejudice for lack of a present case or controversy, as well.[1]

IV.     Failure to State a Claim

Finally, the Corps argues that the Complaint fails to state a claim upon which relief can be granted, as the statute and regulations show that Riverstone is not entitled to the relief requested. The Corps maintains that under the Flood Control Act, it is the responsibility of the Local Sponsors to obtain the land, rights of way, and easements that are necessary for the Corps to construct the flood control project. Once the project is constructed, the Local Sponsors are responsible for maintaining and operating the flood control project. See 33 U.S.C. § 701c. Title 33 C.F.R. § 208.10(2) confirms this responsibility:

> The State, political subdivision thereof, or other responsible local agency, which furnished assurance that it will maintain and operate flood control works in accordance with regulations prescribed by the Secretary of the Army, as required by law, shall appoint a permanent committee consisting of or headed by an official hereinafter called the "Superintendent," who shall be responsible for the development and maintenance of, and directly in charge of, an organization responsible for the efficient operation and maintenance of all of the structures and

---

[1] Parenthetically, the Court notes that this ruling does not mean that a claim against the Local Sponsors may not at some point ripen into a present case or controversy or that some cause of action may not be properly brought against the Local Sponsors in state court.

> facilities during flood periods and for continuous inspection and maintenance of the project works during periods of low water, all without cost to the United States.

Riverstone cites § 702 of the Flood Control Act, which provides in relevant part:

> Upon completion of any levee constructed for flood control under authority of this section, said levee shall be turned over to the levee district protected thereby for maintenance thereafter; but for all other purposes the United States shall retain such control over the same as it may have the right to exercise upon such completion.

As § 702 on its face applies only to improvements "from the Head of the Passes [which is located in Louisiana] to the mouth of the Ohio River [which is somewhere near Cairo, Illinois]," there is some question that § 702 even applies to a flood control project in Milan, Illinois. However, other courts considering this issue have rejected the argument that this language imposes some kind of geographical limitation that renders the Act applicable only to the Lower Mississippi River. See National Manufacturing Co. v. United States, 210 F.2d 263, 274 (8th Cir. 1954); Lenoir v. Porters Creek Watershed District, 586 F.2d 1081, 1086 (6th Cir. 1978).

Assuming that § 702 applies here, the Court disagrees with Riverstone's interpretation of the degree of control that the Corps has the right to exercise upon completion. Section 208.10(5) of the regulations provides some guidance as to what control the United States retains with respect to proposed modifications:

> No improvement shall be passed over, under, or through the walls, levees, improved channels or floodways, nor shall any excavation or construction be permitted within the limits of the project right-of-way, nor shall any change be made in any feature of the works without prior determination by the District Engineer of the Department of the Army or his authorized representative that such improvement, excavation, construction, or alteration will not adversely affect the

> functioning of the protective facilities.  Such improvements or alterations as may be found to be desirable and permissible under the above determination shall be constructed in accordance with standard engineering practice.  Advice regarding the effect of proposed improvements or alterations on the functioning of the project and information concerning methods of construction acceptable under standard engineering practice shall be obtained from the District Engineer or, if otherwise obtained, shall be submitted for his approval.  Drawings or prints showing such improvements or alterations as finally constructed shall be furnished the District Engineer after completion of the work.

Section 208.10(5), when read in context of the entire regulation, clearly indicates that the Corps is reserving its right to determine that proposed modifications will not adversely affect the functioning of the flood control project and that Local Sponsors shall get **"advice"** regarding the effect of proposed improvements on the functioning of the project from the Corps.  If final approval rested with the Corps, as Riverstone suggests, there would be no need for the Local Sponsors to get "advice" from the Corps' District Engineer.  This indicates that final approval in fact rests with the Local Sponsors rather than the Corps.  Moreover, there is nothing in the regulations that would support the reasonable inference that the Corps' reservation of rights to review proposed alterations somehow supercedes or relieves the Local Sponsors of their duty to operate and maintain the flood control project under § 701c.

Similarly, the Corps' Internal Regulation No. 415-2-3 provides that upon completion, project sponsors are "responsible for protecting the levee and/or floodwall and levee system against damage or unauthorized changes."  Paragraph 5.b. of the regulation goes on to state:

> The project is the property and responsibility of the project sponsor. . . .Title 33, Section 208, paragraph 208.10a(5) of the

> Code of Federal Regulations which reads as follows: "No improvement shall be passed over, under, or through the walls, levees . . . nor shall any excavation or construction be permitted within the limits of the project right-of-way, nor shall any change be made in any feature of the works without prior determination by the District Engineer of the Department of the Army or his authorized representative that such improvement, excavation, construction, or alteration will not adversely affect the functioning of the protective facilities.

Paragraph 7 then provides that applications for modification from non-Federal entities (such as Riverstone) "should be made to the project sponsor responsible for maintenance of the completed works" and that with respect to levees on the Mississippi River and tributaries, "the project sponsor (levee board) will ordinarily request advice from the District Commander."

As the Corps' regulations are consistent with the terms of the Flood Control Act and provide for the ultimate authority to rest with the Local Sponsors, who shall receive **"advice"** from the Corps on technical issues, the Court must conclude that the procedure that Riverstone alleges was followed in this case was in accordance with the statute and did not amount to an improper delegation of approval authority as a matter of law. Accordingly, even when all allegations and reasonable inferences are construed in the light most favorable to Riverstone, the Court cannot find that there is any set of facts that could be established in support of Riverstone's claim that would entitle it to relief. Riverstone has therefore failed to state any claim upon which relief can be granted.

## CONCLUSION

For the reasons set forth above, the Village of Milan's Motion to Dismiss [#13] is GRANTED. The Big Island River Conservancy District's Motion to Dismiss [#15] is

GRANTED, and the United States' Motion to Dismiss [#27] is GRANTED.  This matter is now TERMINATED.

    Entered this 14th day of October, 2005.

                                                  s/ Michael M. Mihm
                                                  Michael M. Mihm
                                                  United States District Judge